FILED

OCT 25 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  LC                                    DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY STREM,<br><br>                              Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO SHERIFFS DEPUTIES WILLIS (#9925) and MYERS (#7284); DOES 1-5,<br><br>                              Defendants. | Case No.:  3:15-CV-2120-KSC-JMA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 106]** |

   This is an action for money damages brought by plaintiff Timothy Strem against defendants San Diego Sheriff's Deputies Vernon Willis, Peter Myers, and their employer, the County of San Diego (collectively, "Defendants").  Presently before the Court is defendants' Motion for Summary Judgment [Doc. No. 106], which seeks an order granting summary judgment on the basis of qualified immunity.

   This case was initially set for a jury trial to begin on May 30, 2017. [Doc. No. 67.] However, on May 12, 2017, the Ninth Circuit Court of Appeals published an opinion in *S.B., a minor v. County of San Diego,* No. 15-56848, 2017 WL 1959984 (9th Cir. May 12, 2017) ("*S.B.*"), which provided additional guidance on the issue of qualified immunity. Accordingly, on May 19, 2017, this Court vacated the trial and ordered the parties to submit

1  supplemental briefing on the issue of qualified immunity. [Doc. No. 102.]    On June

2  15, 2017, defendants filed a Motion for Summary Judgment on plaintiff's two remaining

3  claims: (1) federal excessive force in violation of 42 U.S.C. § 1983; and, (2) state law

4  battery.[1] [Doc. No. 106.] On July 13, 2017, plaintiff filed an Opposition to the Motion.

5  [Doc. No. 107.] On July 21, 2017, defendants filed a Reply to the Opposition. [Doc. No.

6  108.] On August 7, 2017, plaintiff filed a Surreply. [Doc. No. 111.]

7  For the reasons set forth below, defendants' Motion for Summary Judgment as to

8  the federal excessive force claim is **GRANTED** on the basis of qualified immunity. Given

9  that no federal claim remains, the Court declines to exercise jurisdiction over the remaining

10  state law battery claim.

11  **I.    FACTUAL BACKGROUND**

12  On September 24, 2014, plaintiff called his physician's office and spoke to Matthew

13  Hollen and Tiffany Branam, patient services representatives. [Doc. No. 107-2, at p. 2.]

14  Plaintiff, frustrated about his unresolved medical issues, became upset and made a

15  comment that was interpreted as a suicide threat. [Doc. No. 107-6, Hollen Dep. 42:17-18,

16  43:6-8.] Mr. Hollen was "very concerned" and was reportedly "shaking and yelling,"

17  asking plaintiff to "stay with [him]." [Hollen Dep., 44:2; Doc. No. 107-5, Branam Dep.

18  19:16-17, 18:2.] In response, Ms. Branam, Mr. Hollen's colleague who overheard Mr.

19  Hollen, called 911 and reported the suicide threat. [Branam Dep. 18:21-25.]

20  At approximately 10:00 a.m., Sheriff's Deputies Vernon Willis and Peter Myers

21  were dispatched to plaintiff's home in Vista. [Doc. No. 107-12, Ex. 1c ("Dispatch

22  Trans.").] They were told by the radio dispatcher:

23

24

25  [1] Plaintiff's original Complaint asserted five causes of action against defendants. [Doc. No. 1.] However,
    on February 14, 2017, the parties jointly moved to dismiss, with prejudice, the First (42 U.S.C. § 1983 -
26  Unreasonable Seizure (Detention/Arrest)), Third (Negligence under California Law), and Fourth (False
    Arrest under California Law) Claims for Relief. [Doc. No. 31.] The Court granted this Motion. [Doc. No.
27  32.] Accordingly, plaintiff is now limited to the Second Claim (Excessive Force under 42 U.S.C. § 1983)
    and Fifth Claim (Battery under California law).

28

2

> [Reporting party] is advising received a phone call from patient that he was going to take pills and 11-45 [suicidal threat], his name is Timothy Strem. They have another person on landline with the subject trying to calm him down. He hasn't taken any pills at this time. He's going to be a male, and they're advising he stopped making threats and is lying down.

*Id.* at 1:6-10.

When the deputies arrived at plaintiff's address, they knocked on the door of plaintiff's building. During this time, the radio dispatcher told the deputies that plaintiff "did state he had his gun out." [Dispatch Trans., at 2:6-17.] The radio dispatcher again repeated: "11-45 [suicidal threat] suspect at 634 Galaxy Drive. He stated to the hospital that he had a gun out." *Id.* at 3:1-2.

When plaintiff exited his house, both deputies observed plaintiff holding a phone in one hand and a bloody napkin in the other. [Doc. No. 107-8, Willis Dep. 59:1-3; Doc. No. 107-7, Myers Dep. 38:18-22.] Plaintiff was shirtless, shoeless, and wearing only pajama pants, with the pockets turned out. [Doc. No. 107-12, Ex. 1c; Doc. No. 107-13, Ex. 2; *see also* Doc. No. 106-1, at p. 7; Doc. No. 107-1, at p. 5.] Plaintiff contends that the deputies should have known that plaintiff had been coughing up blood because the radio dispatcher was informed of this. [Doc. No. 107-1, at p. 4.] However, there is no indication that the deputies were informed of this based on the radio dispatch call transcript. [*See* Dispatch Trans.]

Both parties agree that when plaintiff exited his house, defendants had legal justification to take plaintiff into custody. [Doc. No. 76, at p. 1.] The facts leading up to plaintiff's handcuffing, however, are disputed. Plaintiff contends that he told the deputies about his shoulder injuries and heart condition, but that they still asked him to put his hands behind his back.[2] [Doc. No. 107-9, Strem Dep. 95:15-22; 96:15-17.] Instead of putting his hands behind his back, plaintiff put his hands at his side "because [he] knew that [his]

---

[2] Plaintiff also contends that he had "a visible scar and lump in his chest where his pacemaker/defibrillator is implanted." [Exhibit 12; *see also* Doc. No. 107, at p. 13.]

1   shoulders . . . had a problem." *Id.* at 96:21-24. Plaintiff had trouble recalling the details of

2   this encounter because it "happened so fast," but alleges that he repeatedly stated that he

3   could not put his hands behind his back. *Id.* at 95-104. Both parties agree that plaintiff was

4   taken to the ground and handcuffed behind his back. [Doc. No. 76, at p. 1.]

5       Defendants allege that during this encounter, Deputy Willis gave plaintiff

6   "commands to come towards [him]," which plaintiff ignored. [Willis Dep. 60:17-61:11;

7   62:8-9.] He described plaintiff's demeanor as "noncompliant." *Id.* at 61:25. Deputy Willis

8   explained in his deposition that "after giving [plaintiff] ample chance to not tense his

9   muscles," the deputies "took [plaintiff] to the ground." *Id.* at 66:16-17. Deputy Myers

10  described the takedown from his perspective: "[I]t looked like [Deputy Willis] pretty much

11  pulled him to the ground." [Myers Dep. 47:22-24.] At this point, Deputy Willis placed his

12  knee on the back of plaintiff's head "because he kept moving" [Willis Dep. 68:18] and the

13  deputies secured plaintiff's hands behind his back and handcuffed him. [Willis Dep. 68:15-

14  20; Myers Dep. 48:25-49:4.]

15      Upon a search of plaintiff, the deputies found that he had no weapons on his body.

16  [Willis Dep. 49:24-25.] Upon plaintiff's consent, the deputies searched plaintiff's house

17  and found a .38 caliber revolver in his bedroom. *Id.* at 51:21-53:14. Plaintiff was then

18  transported to Tri-City Hospital for a psychiatric evaluation. [Doc. No. 76, at p. 1.] While

19  the altercation resulted in pain, concern for his health, and minor injuries, "[plaintiff's]

20  injuries were not lasting or permanent." [Doc. No. 94, at p. 1.]

21      Plaintiff asserts a federal claim under 42 U.S.C. § 1983 alleging that given his

22  physical limitations, defendants' use of force was unwarranted and violated his

23  "constitutional right under the Fourth Amendment to the United States Constitution to be

24  secure in his person from the use of unreasonable and excessive force." [Doc. No. 1, at p.

25  7.] Defendants argue that the deputies are entitled to qualified immunity on the excessive

26  force claim, and move for summary judgment on this basis. [Doc. No. 106-1.]

27  / / /

28  / / /

1  **II.   LEGAL STANDARD**

2          Summary judgment is appropriate where "there is no genuine issue as to any material

3  fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

4  56(c).  The moving party initially bears the burden of proving the absence of genuine issue

5  of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party

6  meets its burden, the burden shifts to the non-moving party to show there is a genuine issue

7  for trial. *Id.* at 331.

8          The Court considers the record as a whole and draws all reasonable inferences in the

9  light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212

10 F.3d 528, 531 (9th Cir. 2000). The Court does not make credibility determinations or weigh

11 conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather,

12 the Court determines whether the record "presents a sufficient disagreement to require

13 submission to a jury or whether it is so one-sided that one party must prevail as a matter of

14 law." *Id.* at 251-52.

15 **III.   ANALYSIS**

16          ***A. Qualified Immunity***

17          Defendants argue that they are entitled to summary judgment on plaintiff's federal

18 excessive force claim based on qualified immunity.[3]  "Qualified immunity shields a police

19 officer from suit under 42 U.S.C. § 1983 unless (1) the officer violated a statutory or

20 constitutional right; and, (2) the right was clearly established at the time of the challenged

21 conduct." *Thomas v. Dillard*, 818 F.3d 864, 874 (9th Cir. 2016), *as amended* (May 5, 2016)

22 (citations omitted).  This is not a sequential inquiry. *Pearson v. Callahan*, 555 U.S. 223,

23 236 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no

24 longer be regarded as mandatory."). Rather, "[c]ourts have discretion to decide the order

25 in which to engage these two prongs." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citing

26 *Pearson,* 555 U.S. at 236).

27  ───────────────

28 [3] Defendants concede that the qualified immunity defense does not apply to plaintiff's state law battery claim. [Doc. No. 106-1, at p. 6.]

5

### 1.    Clearly Established Right

The Court must determine whether the asserted constitutional right was clearly established at the time of the officers' alleged misconduct.  To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The clearly established law must be "particularized to the facts of the case" and should not be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548 (2017) (citing *Anderson*, 483 U.S. at 639-640); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition").  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional questions beyond debate." *S.B.*, 2017 WL 1959984, at *6, 7 (describing the standard as "exacting").  Put another way, only the "plainly incompetent" officer will not enjoy qualified immunity. *Id.* at *5 (citation omitted).

Before this Court can impose liability on defendants Sheriff Deputies Willis and Myers, it must identify precedent as of September 24, 2014 -- the day of the alleged violation -- that put the deputies "on clear notice that using force in these particular circumstances would be excessive." *S.B.*, 2017 WL 1959984, at *6.  "General excessive force principles, as set forth in *Graham* and *Garner*, are 'not inherently incapable of giving fair and clear warning to officers,' but they 'do not by themselves create clearly established law outside an obvious case.'" *Id.*[4] (internal quotations omitted).  Instead, we must "identify a case where an officer acting under similar circumstances as [defendants'] was held to have violated the Fourth Amendment." *Id.*

The cases relied upon by plaintiff are either too general to satisfy the exacting standard required by *White* and *S.B.*, or are easily distinguishable from the facts of our case. Additionally, the Court, upon its own review, has not located a case that would have put

---

[4] *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Tennessee v. Garner*, 105 S. Ct. 1694 (1985).

1   defendants on clear notice that the alleged force used in this situation would be excessive.

2   The Court recognizes that "no two cases are exactly alike" and that the Court is not required

3   to find a case "directly on point," but concludes that there is no precedent particularized to

4   the facts of this case that would have put the deputies on notice that their conduct was

5   unconstitutional.  *Hughes v. Kisela*, 862 F.3d 775, 786-787 (9th Cir. 2016), *as amended*

6   (June 27, 2017) (internal citations omitted).

7              ***i.   Plaintiff's Claim that the Use of Disproportionate Force***
              ***Constitutes Excessive Force is Not Particularized to the Facts***
8              ***of the Case.***

9

10          Plaintiff's first argument is that "it is clearly established that where there is no need

11  for force, any force used is unreasonable," but "where there is a need for force, the force

12  must be reasonable in light of the circumstances."[5] [Doc. No. 107, at pp. 28-29.] Plaintiff's

13  argument fails because the question here is not whether officers are *generally* allowed to

14  use force, but rather whether officers *acting under similar circumstances* were found to

15  have used excessive force in pulling a plaintiff to the ground to handcuff him.  Pursuant to

16  *S.B.,* in order to avoid a finding of qualified immunity, plaintiff must identify a case in

17  which an officer acting under similar circumstances was held to have violated the Fourth

18  Amendment. 2017 WL 1959984, at *6; *see also Shafer v. Padilla*, No. 15-56548, 2017 WL

19  3707904, at *6 (9th Cir. Aug. 29, 2017) (because plaintiff "failed to identify sufficiently

20  specific constitutional precedents to alert [the deputy] that his particular conduct was

21  unlawful, [the deputy] is entitled to qualified immunity.")

22

23

_____

24  [5] Plaintiff cites to twelve cases to support this argument. *Graham v. Connor*, 490 U.S. 386, 396 (1989);
    *Headwaters Forest Def. v. Cnty. Of Humboldt* (*Headwaters I*), 240 F.3d 1185, 1199 (9th Cir. 2003);
25  *Lolli v. Cnty. of Orange*, 351 F.3d 410, 417, n.5 (9th Cir. 2003); *Espinoza v. City & Cnty. of San
    Francisco*, 598 F.3d 528 (9th Cir. 2010); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *Barnard v.
26  Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013); *Fogarty v. Gallego*, 523 F.3d 1147, 1161 (10th Cir.
    2008); *Perea v. Baca*, 817 F.3d1198, 1204 (10th Cir. 2016); *Casey v. City of Fed. Heights*, 509 F.3d
27  1278, 1281 (10th Cir. 2007); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013); *Nelson
    v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012); *Blankenhorn v. City of Orange*, 485 F.3d 463, 478-
28  81 (9th Cir. 2007).

None of the cases cited to by plaintiff meet the exacting standard required by *S.B.*, to provide the deputies with the "clear notice" that using the amount of force at issue was unlawful. *Id.* As a preliminary matter, plaintiff does not even attempt to analogize the facts of the cases cited to the facts of this case to argue that those cases provided the deputies with "clear notice" that the amount of force they used was unlawful. *Id.* In the Court's own review of the cases cited by plaintiff, none contain sufficiently similar facts to the instant case which might provide such notice. For example, *Lolli v. County of Orange,* relied on by plaintiff, involved officers who allegedly hit plaintiff with batons, kicked and punched him, bent his spine, sprayed him with pepper spray, and pounded his head to the ground. 351 F.3d 410, 412 (9th Cir. 2003). Here, plaintiff was not hit with a baton, sprayed with pepper spray, nor had his head pounded to the ground. Thus, *Lolli* is not sufficiently similar to provide the deputies with "clear notice." *S.B.*, 2017 WL 1959983, at *6. Similarly, plaintiff also relies on *Nelson v. City of Davis,* which involved a plaintiff who suffered permanent injury when he was shot in the eye by an officer who was attempting to disperse remaining students at an apartment complex party. 685 F.3d 867, 872-74 (9th Cir. 2012). Here, the officers did not fire a weapon resulting in injury to the plaintiff, and the plaintiff did not suffer permanent injury. *See S.B.*, 2017 WL 1959983, at *6. Thus, *Nelson*, nor any of the other cases cited by plaintiff, are sufficiently similar to provide the deputies with "clear notice" that their conduct was unlawful under *S.B.* 2017 WL 1959983, at *6.

### ii. It Is Not Clearly Established that Under Similar Circumstances, Using Force on a Suicidal Subject Constitutes Excessive Force.

Plaintiff's second argument is that "it is clearly established that in dealing with suicidal or mentally ill subjects, the interest in using force is diminished." [Doc. No. 107, at pp. 29-30 (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001); *Drummond v. City of Anaheim,* 343 F.3d 1052, (9th Cir. 2003); *Glenn v. Washington Cnty.*, 673 F.3d 864, 871-78 (9th Cir. 2011); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1227-28, 1233-35 (9th Cir. 2013)).] Plaintiff relies on these four aforementioned Ninth Circuit cases, in

1   which the trial courts denied defendants' summary judgment motions on qualified

2   immunity grounds.  However, none of those cases could have provided the deputies in this

3   case with "clear notice" that the amount of force they used in this case was unlawful,

4   because the factual circumstances surrounding the arrests in those cases were vastly

5   different than the facts in the instant case, except that they also involved a suicidal threat

6   by a plaintiff.

7         In *Deorle*, for example, there were at least thirteen officers at the scene, including a

8   canine team and police dog who barked "aggressively" at plaintiff, causing plaintiff to

9   retreat back into the house. 272 F.3d at 1276.  Some officers had been at the scene for thirty

10  to forty minutes, during which time plaintiff had gained, and subsequently relinquished,

11  control of multiple weapons. *Id.* at 1276-1278.  The defendant officer in *Deorle* fired a

12  twelve-gauge shotgun with "cloth-cased" shots at plaintiff, which resulted in "multiple

13  fractures to [plaintiff's] cranium, loss of [plaintiff's] left eye, and lead shot embedded in

14  [plaintiff's] skull." *Id.* at 1278.  There, the Ninth Circuit denied defendants' motion for

15  summary judgment, finding the officer's force to be excessive, in violation of plaintiff's

16  Fourth Amendment right. *Id.*  Here, however, there were only two officers, no canine team,

17  the encounter lasted less than ten minutes, and there were no shots fired.  Thus, the facts

18  presented in *Deorle* are not sufficiently similar to the facts of this case to provide the

19  deputies with "clear notice" that the conduct at issue herein violated plaintiff's

20  constitutional rights. *S.B.*, 2017 WL 1959984, at *6.

21        Similarly, in *Drummond*, both plaintiff's fiancée and a neighbor called the police

22  because they feared that plaintiff would hurt himself "by darting out into traffic." 343 F.3d

23  at 1044. There was no mention of a gun or weapon by either caller, yet the officers

24  "knocked [plaintiff] to the ground" and applied force once plaintiff was *already*

25  handcuffed, causing plaintiff to lose consciousness. *Id.*  Plaintiff did not resist. *See id.* at

26  1061.  Plaintiff sustained brain damage, which left him in a "permanent vegetative state."

27  *Id.* at 1055.  There, the Ninth Circuit found the officers' force to be "severe" and "wholly

28  unwarranted," and denied qualified immunity. *Id.* at 1063. By contrast, the officers in this

9

case were told twice by the radio dispatcher that plaintiff had a gun out, the officers did not apply force once plaintiff was handcuffed, and plaintiff concedes that he suffered no serious or permanent injury. [Doc. No. 106-1, at p. 8; Doc. No. 107, at p. 19.] Thus, *Drummond* is not sufficiently similar to provide the deputies with "clear notice." *S.B.*, 2017 WL 1959984, at *6.

Plaintiff's citations to *Glenn* and *Hayes*, *supra*, also fail because both involve the use of deadly force, and here, no deadly force was used and plaintiff concedes that he suffered no serious or permanent injury, thereby conceding that no deadly force was used on plaintiff. [Doc. No. 107, at p. 19]. *Glenn v. Washington Cnty.*, 673 F.3d at 871-78; *Hayes v. Cnty. of San Diego*, 736 F.3d at 1227-28, 1233-35. In *Glenn*, the Court noted that there are "no published cases holding it reasonable to use a *significant* amount of force to try to stop someone from attempting suicide." 673 F.3d at 872 (emphasis in original). "Significant" was defined as "causing serious injury or death." *Id.* Here, the amount of force used was no more than necessary to handcuff plaintiff's hands behind his back, and plaintiff did not suffer serious injury or death. [Doc. No. 107, at p. 19.] *Glenn*, therefore, is not sufficient to put the defendants on "clear notice" their conduct was unlawful.

Accordingly, plaintiff's argument that it is clearly established that "in dealing with suicidal or mentally ill subjects, the interest in using force is diminished" fails.

### iii.   *It Is Not Clearly Established that Under Similar Circumstances, Painful Application of Handcuffs Constitutes Excessive Force.*

Plaintiff's third argument is that it is "clearly established that the way handcuffs are applied can constitute excessive force." [Doc. No. 107, at p. 30.] Plaintiff misinterprets the "exacting" nature of the applicable standard by framing the inquiry in general terms. As made abundantly clear by both the Supreme Court and the Ninth Circuit, "clearly established law should not be defined at a high level of generality." *White*, 137 S. Ct. at 552; *see also S.B.*, 2017 WL 1959984, at *5.

1    Although plaintiff cites numerous cases in support of his general argument, the Court
2    will only address the authority that is binding on this Court. [Doc. No. 107, at pp. 30-31
3    (citing *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 964 (9th Cir. 2000); *U.S. v. Bautista*,
4    684 F.2d 1286, 1289 (9th Cir. 1982); *Meredith v. Erath*, 342 F.3d 1057, 1060 (9th Cir.
5    2003); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989); *Palmer v. Sanderson*, 9 F.3d
6    1433, 1436 (9th Cir. 1993); *Alexander v. Cnty. Of Los Angeles*, 64 F.3d 1315, 1322-23 (9th
7    Cir. 1995); *Baldwin v. Placer Cnty.*, 418 F.3d 966, 970 (9th Cir. 2005); *Wall v. Cnty. of
8    Orange*, 364 F.3d 1107, 1109-10 (9th Cir. 2004))]. Notably, none of these cases involve a
9    suicidal and possibly injured plaintiff who was reported to have a gun readily accessible,
10   like the plaintiff in our case. Plaintiff failed to meet his burden to provide this Court with
11   precedent particularized to the facts of this case.

12   In *Meredith*, for example, the Ninth Circuit found that extended handcuffing for the
13   duration of a search in a tax-related crime may violate the Fourth Amendment. 342 F.3d at
14   1063. The Court held: "***In these circumstances***, it was objectively unreasonable and a
15   violation of the Fourth Amendment for [defendant] to grab [plaintiff] by the arms, throw
16   her to the ground, and twist her arms while handcuffing her." *Id.* (emphasis added).
17   Plaintiff cited to this exact language, yet failed to show any similarity between the
18   "circumstances" referred to by the Ninth Circuit and the circumstances of plaintiff's case.
19   On the contrary, the circumstances of the handcuffing in *Meredith* are easily
20   distinguishable from the circumstances of the handcuffing in this case. Unlike the officers
21   in *Meredith*, who had no reason to believe that the plaintiff posed a physical threat to herself
22   or others, the deputies here were responding to an emergency call regarding a suicidal
23   suspect who reportedly had an accessible gun, and who exited his house with a visibly
24   bloody napkin.

25   Furthermore, there is case law in this circuit to support the conclusion that a suspect
26   can be painfully handcuffed in certain circumstances, as summarized below. In *Sinclair v.*
27   *Akins*, for example, the Ninth Circuit upheld the district court's grant of qualified immunity
28   due to plaintiff's failure to identify sufficiently specific precedent. No. 14-35617, 2017 WL

2274968, at *2 (9th Cir. May 24, 2017). The court found no precedent establishing that "tight handcuffs alone, without any physical manifestation of injury . . . , where the initial handcuffing was justified, constituted excessive force." *Id.* Similarly, the Court in *Wyant v. City of Lynnwood* found that "there is no clearly established right to be free from pain-free, non-injuring force used to effect an arrest." No. C08-283RAJ, 2010 WL 128389, at *4 (W.D. Wash. Jan. 11, 2010).[6] Furthermore, this Court recently held that an officer responding to a suicidal individual who resisted arrest "used no more than the amount of force necessary under the circumstances" when he "took plaintiff to the ground and handcuffed him." *Redon v. Jordan*, No. 13CV1765-WQH-KSC, 2017 WL 1155342, at *7-8 (S.D. Cal. Mar. 28, 2017) (basing its decision on the "nature of the call, plaintiff's deteriorating emotional state, and [p]laintiff's active resistance"). Similarly, the Ninth Circuit in *Injeyan v. City of Laguna Beach* found "no precedent placing the conclusion that [defendant's] alleged conduct under the particular circumstances he confronted was unreasonable beyond debate." 645 F. App'x 577, 579 (9th Cir. 2016) ("forcibly lifting [plaintiff's] arms behind her back" did not constitute excessive force under the particular circumstances of the case).

None of the cases cited to by plaintiff meet the exacting standard required by *S.B.*, to provide the deputies with "clear notice" that the manner in which plaintiff's handcuffs were applied may constitute excessive force. *S.B.*, 2017 WL 1959984, at *3-4. As such, plaintiff's claim that it is "clearly established" that tight handcuffing is constitutionally impermissible fails.

### iv.   It Is Not Clearly Established that Under Similar Circumstances, Failure to Accommodate a Pre-Existing Physical Condition Constitutes Excessive Force.

Plaintiff's fourth argument is that the deputies should lose the protection of qualified immunity because "it is clearly established that a person's advisal to deputies of a pre-

---

[6] While this is a district court decision, the court cites to numerous circuit court decisions to support its conclusion. *Wyant*, 2010 WL 128389, at *n2.

existing condition which would render handcuffing behind the back painful can make a

seizure unreasonable." [Doc. No. 107, at p. 32.] The cited cases, however, are substantially

different from the factual circumstances presented in our case, as detailed below.  Of the

eight cases plaintiff relies on, only four are binding on this Court.[7] [Doc. No. 107, at p. 32-

33 (citing *Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1115 (9th Cir. 2005); *Lacey v.*

*Maricopa Cnty.*, 693 F.3d 896, 924 (9th Cir. 2012); *Stocker v. City & Cnty. of San*

*Francisco*, 185 F.3d 869 (9th Cir. 1999) (unpublished disposition); *Winterrowd v. Nelson*,

480 F.3d 1181, 1182 (9th Cir. 2007)).] These cases present entirely different circumstances

than those raised in this case.

The plaintiff in *Blanford*, for example, was driving through a residential

neighborhood wearing a ski mask, armed with a Civil War-era sword. 406 F.3d at 1112.

In an attempt to secure plaintiff's weapon, the deputies shot him. *Id.* at 1113-14.  Because

of the unique set of facts presented in *Blanford*, the Ninth Circuit ultimately granted

qualified immunity, holding that no Supreme Court or circuit court precedent existed that

would have "put a reasonable officer in the deputies' position on notice" that their actions

"in the particular circumstances" were unconstitutional.[8] *Id.* at 1119.  The Court finds that

plaintiff's reliance on this case is unpersuasive because the facts are not similar to the facts

in our case, and qualified immunity in *Blanford* was ultimately granted.

Plaintiff also cites to *Stocker v. City & County of San Francisco*, where a suspect

with a shoulder injury was arrested in an airport for public intoxication. *See* 185 F.3d 869.

---

[7] The Court does not include herein a summary or an analysis of the non-binding authority relied on by plaintiff. [Doc. No. 107, at pp. 32-33 (citing *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998); *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir 2009); *Beckles v. City of New York*, 2012 U.S. App. LEXIS 17433, *2 (2d Cir. 2012)).]

[8] Acknowledging the requirement for specificity, the Ninth Circuit held: "[t]he deputies would not have found fair warning in *Garner, Graham,* or any other Supreme Court or circuit precedent at the time that they could not use deadly force to prevent someone with an edged sword, which they had repeatedly commanded him to drop and whom they had repeatedly warned would otherwise be shot, from accessing a private residence where they or people in the house or yard might be seriously harmed." *Blanford*, 406 F.3d at 1119.

1   In this unpublished decision, the Ninth Circuit specifically cautions against citing to this

2   case in the first footnote: "This disposition is not appropriate for publication and may not

3   be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36-3."

4   *Id.* at *n.1.[9]  Even if this case was binding precedent, the facts of the case are distinct from

5   the facts of our case and thereby would not provide the defendant deputies with clear notice

6   that their actions were unlawful.[10]

7          In *Winterrowd*, another case relied upon by plaintiff, the unique facts lead the Ninth

8   Circuit to affirm the district court's denial of qualified immunity. 480 F.3d at 1186.

9   Therein, the officers were performing a pat-down of plaintiff and did not have probable

10  cause to arrest; there was no indication that plaintiff was currently armed or posed a safety

11  threat; the officers applied greater force after plaintiff screamed in pain; and the officers

12  admitted that they could have effectuated the pat-down without forcing plaintiff's arms

13  behind plaintiff's back. *Id.* 1181-86. This is hardly comparable to the facts of our case.

14  Here, two deputies were responding to a dispatch call about a suicidal suspect who

15  reportedly had a gun and who exited his house with a visibly bloody napkin. [Willis Dep.

16  59:1-3; Myers Dep. 38:18-22.] When plaintiff resisted putting his hands behind his back,

17  the deputies brought him to the ground to handcuff him. [Willis Dep. 68:15-20; Myers Dep.

18  48:25-49:4.] Further, both parties agree that the deputies were legally justified to arrest

19  plaintiff, and that plaintiff resisted arrest. [Doc. No. 76, at p. 1; Strem Dep. 96:21-24; Willis

20  Dep. 66:16-17.]

21         This Court has located no case in which officers, acting under similar circumstances,

22  were found to have used excessive force.  Accordingly, the law was not clearly established

23  such that the defendant Sheriff Deputies Willis and Myers would have "clear notice" as of

24

25  [9] Ninth Circuit Rule 36-3 provides in relevant part as follows: "Unpublished dispositions and orders of
    this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim

26  preclusion or issue preclusion." U.S. Ct. of App. 9th Cir. Rule 36-3, 28 U.S.C.A. Here, neither claim
    preclusion nor issue preclusion apply.

27

28  [10] In *Stocker,* there was no prior report of a weapon, no suicidal threat, no bloody napkin, and the
    plaintiff in that case reportedly did not resist arrest. 185 F.3d 869.

1   September 24, 2014 -- the morning of the alleged violation -- that their conduct was

2   unconstitutional under the circumstances of this case. *S.B.*, 2017 WL 1959984, at *3-4. The

3   Court is thereby precluded from stripping defendants of qualified immunity.  Considering

4   all the facts of this case and the relevant law, the Court grants defendants' Motion for

5   Summary Judgment [Doc. No. 106] as to the excessive force claim on the basis of qualified

6   immunity.

7                    **2.      *Fourth Amendment Violation***

8           In discussing the order in which to engage the two inquiries of the qualified

9   immunity analysis, the Ninth Circuit has held that "if the answer to either is 'no,' then the

10  officers cannot be held liable for damages." *Glenn v. Washington Cty.*, 673 F.3d at 870

11  (citing *Pearson*, 555 U.S. at 236).  Because the asserted rights were not clearly established,

12  the Court does not need to address whether the asserted rights were violated. *Reichle v.*

13  *Howards*, 566 U.S. 658 (2012) ("courts may grant qualified immunity on the ground that

14  a purported right was not 'clearly established' by prior case law, without resolving the often

15  more difficult question whether the purported right exists at all") (citing *Pearson*, 555 U.S.

16  at 227).

17          **B. State Law Claims**

18          In addition to his federal excessive force claim, plaintiff also asserts a state law

19  battery claim against defendants. [Doc. No. 1, at pp. 9-10.]  Defendants concede in the

20  Motion for Summary Judgment that "qualified immunity does not apply to [p]laintiff's

21  state law claim." [Doc. No. 106-1, at p. 8.]   A district court may decline to exercise

22  supplemental jurisdiction if the "court has dismissed all claims over which it has original

23  jurisdiction." 28 U.S.C. § 1367(c)(3).  The Court has original jurisdiction over the federal

24  excessive force claim, and hereby grants defendants' Motion for Summary Judgment as to

25  that claim only.  The Court does not, however, have original jurisdiction over the remaining

26  state law claim, and declines to exercise supplemental jurisdiction over plaintiff's state law

27  battery claim.

28  / / /

## IV.   CONCLUSION

The Court grants defendants' Motion for Summary Judgment as to the federal excessive force claim against defendants San Diego Sheriff Deputies Vernon Willis, Peter Myers, and their employer, the County of San Diego.  Because there are no remaining federal claims, the Court declines to exercise jurisdiction over the remaining state law battery claim.  Accordingly, the Court dismisses plaintiff's state law claim for battery against defendants.

**IT IS SO ORDERED.**

Dated:  October 25, 2017

Hon. Karen S. Crawford
United States Magistrate Judge

3:15-CV-2120-KSC-JMA